## Union Charcoal & Chemical Company v. McIntosh, et al.

(Decided May 17, 1927.)

## Appeal from Breathitt Circuit Court.

1. Appeal and Error.—Where evidence supported verdict for damages for canceling contract for the sale of coal, appellant cannot complain because of the court's failure to sustain a demurrer to a ground of recovery for which the jury allowed no damages.

2. Appeal and Error.—Alleged error in refusal to give instructions requested by appellant, on an issue which was not decided adversely to appellant, need not be examined.

3. Sales.—Instruction in seller's action for breach of contract for the sale of coal that, if coal admittedly delivered was screened according to the terms of the contract, jury should find for the seller at the contract price, and, if not screened and of an inferior quality, the jury should find for the seller only the reasonable value of said coal held proper.

4. Appeal and Error.—In an action wherein both parties alleged breach of a contract for the sale of coal, where there was no conflict in the evidence as to the cost of producing and delivering the coal, an instruction not correctly defining the measure of damages was harmless.

5. Sales.—In seller's action for breach of a contract for the sale of coal, evidence held to support verdict for plaintiff.

6. Appeal and Error.—Appellant cannot object to the admission or exclusion of evidence relating to an issue which was not decided adversely to him, and an alleged error in such admission or exclusion will not be examined on appeal.

O. H. POLLARD for appellant.

E. C. HYDEN for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

In January, 1924, French McIntosh made a contract with the appellant, by the terms of which he agreed to mine and deliver in bins at the mines and at the chute at the mines of appellant not less than 200 tons of coal per month, and not exceeding 400 tons of coal per month. The coal was to be screened through a three-fourths inch mesh. He was to be paid $1.75 per ton for all coal which was delivered under the terms of the contract. McIntosh associated with him James Russell, and he is treated as a partner in the undertaking. They commenced operation about the 1st of February and continued their operation of producing and delivering coal until the last of July.

Less than 200 tons were produced and delivered for each month except April and June. For the month of April 214 tons were delivered, and for the month of June 293.7 tons were delivered. About the 1st of July appellant notified the appellees that the contract was canceled because they had failed to properly screen the coal. It is contended by appellant that much of the coal which was delivered was unfit for use because it had not been properly screened. When the contract was terminated, the appellees instituted this suit to recover for damages sustained by them, alleging that appellant had failed and refused to comply with the terms of the contract. They divided their cause of action into two parts. They claimed that they were prevented from furnishing the full amount of coal each month, that is 400 tons, because appellant refused to remove it from the bins and that when the bins were full they had to cease operation. They claimed as the second part of their cause of action that they were ready, willing, and able to fulfill their contract for the remaining months which it had to run by producing 400 tons per month, and that they were prevented from so doing by reason of the cancellation of the contract.

It is the same old question, which has been arising ever since contracts were first made, which the jury was called on to determine on the trial of this case. Each party claimed that the other had violated the contract. It was appellant's contention that it was forced to cancel the contract because appellee disregarded the terms of the contract which required the coal to be screened. This is denied by appellees, and they contend that they complied with their contract in this respect and were prevented from producing the full amount of coal called for under the terms of the contract because appellant would not remove it from the bins. The jury found some merit in the contention of both parties and returned a verdict in favor of appellees for $754.80, but this does not represent the finding of the jury in favor of appellees against appellant on controverted points. It seems to be admitted that appellees had not been paid for the coal which was delivered in July, and that the amount due them on settlement for that month, after deducting their indebtedness to appellant, was $254.80. The jury therefore allowed appellees $500 in damages and so stated in their verdict. The jury further stated in its verdict that the $500 in damages allowed was under the third instruction given by the court. The third instruction related to

the damages sustained by appellees, if any, by reason of their being denied the right to produce and deliver coal after the contract was canceled and for the remainder of the term of the contract.

Appellant has filed a voluminous and well-prepared brief, urging many grounds for reversal. It is urged that the court should have sustained a demurrer to the petition because appellees attributed their damages to the failure of appellant to remove the coal from the bins, when the terms of the contract did not specify any time when the coal should be removed from the bins. This related to the alleged damages prior to the cancellation of the contract, and, as the jury did not allow any damages by reason of the failure to remove the coal from the bins or any other reason on this allegation in the petition, appellant has no reason to complain. The allegations of the petition as to profits lost by reason of the cancellation of the contract by appellant are sufficient, and the demurrer was properly overruled.

It is urged that the instructions are erroneous, and that the court should have given certain instructions offered by appellant. The two instructions offered by appellant relate to the alleged damages during the period of operation, and, if the jury did not find any damages for that period, it is unnecessary to examine the instructions offered by the appellants on that point.

Complaint is made about the first instruction. That instruction tells the jury that it is admitted by the parties that appellant had received 191 tons of coal for which they had not been paid, and that the contract price was $334.25, and that the jury should find for the appellees that sum, less $79.45 which appellees admittedly owed appellant. The objection to this instruction is that appellant relied on the defense that at least half of the coal had not been screened. The court allowed the jury to find for the plaintiff only in the event the 191 tons of coal had been screened, and aptly told the jury, if it believed from the evidence that said coal was not screened in accordance with the terms of the contract and that by reason thereof it was of inferior quality, the jury should find for the appellees only the reasonable value of said coal less the store account. The instruction was proper. Complaint is made about the second instruction, but there is no occasion for us to examine it as the jury found nothing for appellees under the second instruction, but

the effect of their verdict was a finding for appellants under that instruction.

The only complaint made about the third instruction is that it does not correctly define the measure of damages. If there was any conflict in the evidence as to the cost of producing and delivering the coal in accordance with the terms of the contract, the criticism of this instruction would be justified, but it does not appear that there was any conflict in the evidence on this point. The proof showed that the cost of producing and delivering the coal was $1, and that appellees realized a profit of 75 cents per ton. The error, therefore, in not stating the measure of damages in the instruction, was harmless.

By the fourth instruction the jury was, in effect, told that appellant had the right to cancel the contract if appellees were not ready, willing, and able to deliver the coal screened as required by the contract. It is urged that the verdict is not supported by the evidence. The evidence was conflicting as to whether appellees were in position to furnish the coal as required by the contract, and as to whether it had been furnished in accordance with the terms of the contract. The jury were the judges of the evidence, and the verdict is in accordance with the weight of the evidence.

The last objection urged is that the court allowed incompetent evidence to go to the jury, or refused to allow competent evidence in behalf of appellant to go to the jury. The evidence complained of relates to the alleged damages before the termination of the contract. The jury found nothing for the appellees, based on their claim for damages before the termination of the contract, and for that reason appellant may not complain of the ruling of the court on this evidence. We find no error in the record prejudicial to the substantial rights of appellant.

The judgment is affirmed.